STEPHEN M. LOBBIN
sml@smlavvocati.com
SML AVVOCATI P.C.
888 Prospect Street, Suite 200
San Diego, California 92037
(949) 636-1391 (Phone)

*Attorney(s) for Display Technologies, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DISPLAY TECHNOLOGIES, LLC**, <br><br> *Plaintiff*, <br><br> v. <br><br> **MOCACARE CORP.**, <br><br> *Defendant*. | **CASE NO. 3:22-cv-00219** <br><br> **PATENT CASE** <br><br> **JURY TRIAL DEMANDED** <br><br> **COMPLAINT** |

Plaintiff Display Technologies, LLC ("Plaintiff" or "Display") files this Complaint against Mocacare Corp. ("Defendant" or "Mocacare") for infringement of United States Patent No. 9,300,723 (the " '723 Patent").

## PARTIES AND JURISDICTION

1. This is an action for patent infringement under Title 35 of the United States Code. Plaintiff is seeking injunctive relief as well as damages.

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 1338(a) (Patents) because this is a civil action for patent infringement arising under the United States patent statutes.

3. Plaintiff is a Texas limited liability company with an address of 1 East Broward Boulevard, Suite 700, Ft. Lauderdale, FL 33301.

4.      On information and belief, Defendant is a Delaware corporation with a principal place of business at 1755 E Bayshore Road, Suite 10A & 10B, Redwood City, CA 94063. On information and belief, Defendant may be served through its agent, Alice Chiu, 887 Federation Way, Palo Alto, CA 94303, or Harvard Business Services, Inc., 16192 Coastal Hwy, Lewes, DE 19958.

5.      This Court has personal jurisdiction over Defendant because Defendant has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

6.      Upon information and belief, Defendant's instrumentalities that are alleged herein to infringe were and continue to be used, imported, offered for sale, and/or sold in this District.

## VENUE

7.      On information and belief, venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant is a resident of this District. Alternatively, acts of infringement are occurring in this District and Defendant has a regular and established place of business in this District.

## COUNT I
## (INFRINGEMENT OF UNITED STATES PATENT NO. 9,300,723)

8.      Plaintiff incorporates paragraphs 1 through 7 herein by reference.

9.      This cause of action arises under the patent laws of the United States and, in particular, under 35 U.S.C. §§ 271, *et seq*.

10.     Plaintiff is the owner by assignment of the '723 Patent with sole rights to enforce the '723 Patent and sue infringers.

11.     A copy of the '723 Patent, titled "Enabling social interactive wireless communications," is attached hereto as Exhibit A.

12.     The '723 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

13.     Defendant has infringed and continues to infringe one or more claims, including at least Claim 1 of the '723 Patent by making, using, and/or selling media systems covered by one or more claims of the '723 Patent. For example, Defendant makes, uses, and/or sells the MOCACARE health app, MOCACARE BP monitor, associated software, hardware and/or apps, and any similar products ("Product"). At a minimum by internal testing, Defendant has infringed and continues to infringe the '723 Patent in violation of 35 U.S.C. § 271.

14.     Regarding Claim 1, the Product is a media system. The Product includes a media system (e.g., health app) configured to allow a user to view a media file (e.g., health data) from a medical device by a media terminal (e.g., smartphone) from a media node (e.g., medical device) over a communication network (e.g., Bluetooth network) through a communication link. Certain aspects of this element are illustrated in the screenshots below and/or those provided in connection with other allegations herein.



Source: https://www.amazon.com/MOCACuff-Automatic-Pressure-Monitor-Bluetooth/dp/B01MTVKUOW

MOCACuff features a built-in "Bluetooth Data Transmission" function, which enables the device automatically transmit measuring results to paired Bluetooth-enabled device after measurement. When connection established, BPM would transmit memory data such as Measure Date, Systolic, Diastolic and Pulse to the Bluetooth enabled device.

Source: https://images-na.ssl-images-amazon.com/images/I/91oJLSPy%2BWS.pdf

COMPLAINT AGAINST MOCACARE CORP.

15.     The Product includes at least one media terminal disposed in an accessible relation to at least one interactive computer network. For example, the Bluetooth network is used for sending health data from a media node (medical device) by detecting a smartphone (at least one media terminal) when the Product's app is installed on the smartphone and connected with the Product's media node through a Bluetooth network (i.e., the smartphone is in an accessible relationship with the interactive computer network). Certain aspects of this element are illustrated in the screenshots below and/or in those provided in connection with other allegations herein.



Source: https://www.amazon.com/MOCACuff-Automatic-Pressure-Monitor-Bluetooth/dp/B01MTVKUOW



It syncs wirelessly with the MOCACARE App, on which you can access your measurement history, health trend graphs, and personalized health coaching. Easily export and email measurements to your doctor or loved ones to keep them informed on your health. MOCAArm is so intuitively designed and portable that it'll make monitoring your blood pressure more convenient than ever.

Source: https://store.mocacare.com/pages/mocaarm

16.     A wireless range is structured to permit authorized access to the at least one interactive computer network. For example, the Bluetooth signals of the Product's medical device (media node) have a range within which the smartphone (media terminal) may connect.

COMPLAINT AGAINST MOCACARE CORP.



Source: Actual usage of a product.
Source: https://www.youtube.com/watch?v=4xBkE_VO3kg



Source: https://images-na.ssl-images-amazon.com/images/I/91oJLSPy%2BWS.pdf

17.     At least one media node is disposable within the wireless range, wherein the at least one media node is detectable by the at least one media terminal.  For example, the Product's medical device (media node) is detectable by the media terminal (smartphone). Certain aspects of this element are illustrated in the screenshots below and/or those provided in connection with other allegations herein.




Source: Actual usage of a product.
Source: https://www.youtube.com/watch?v=-Ph3L5cwMHI

## Press ✚ button for one time:

Under Standby Mode,

1. Press ✚ button for one time to wake up the device and starting Bluetoothfunction (Bluetooth Symbol flashing).
2. While transmitting the reading to your Bluetooth-enabled Device, MOCACuff Bluetooth Symbol will remain steady on the screen.
3. MOCACuff can only pair up with one Bluetooth-enabled device at a time. To transmit measuring results to other Bluetooth-enabled device, please retry as mention above.

- Make sure MOCACuff and paired Bluetooth-enabled device are within acceptable distance (no more than 10 meters) with each other. If not, put them closer.

Source: https://images-na.ssl-images-amazon.com/images/I/91oJLSPy%2BWS.pdf

COMPLAINT AGAINST MOCACARE CORP.

18.     At least one digital media file is initially disposed on at least one of the at least one media terminal or the at least one media node and the at least one media terminal is structured to detect the at least one media node disposed within the wireless range.  For example, the health data is initially disposed on the media node (medical device/monitor) and the media terminal can detect the medical device when it is within the appropriate range. Certain aspects of this element are illustrated in the screenshots below and/or those provided in connection with other allegations herein.



Source: https://www.amazon.com/MOCACuff-Automatic-Pressure-Monitor-Bluetooth/dp/B01MTVKUOW

> MOCACuff features a built-in "Bluetooth Data Transmission" function, which enables the device automatically transmit measuring results to paired Bluetooth-enabled device after measurement. When connection established, BPM would transmit memory data such as Measure Date, Systolic, Diastolic and Pulse to the Bluetooth enabled device.

Source: https://images-na.ssl-images-amazon.com/images/I/91oJLSPy%2BWS.pdf

19.     A communication link is structured to dispose the at least one media terminal and the at least one media node in a communicative relation with one another via the at least one interactive computer network. For example, the smartphone and medical device are in a communicative relation over the Bluetooth network.

## Press ✛ button for one time:

Under Standby Mode,

1. Press ✛ button for one time to wake up the device and starting Bluetoothfunction (Bluetooth Symbol flashing).
2. While transmitting the reading to your Bluetooth-enabled Device, MOCACuff Bluetooth Symbol will remain steady on the screen.
3. MOCACuff can only pair up with one Bluetooth-enabled device at a time. To transmit measuring results to other Bluetooth-enabled device, please retry as mention above.

- Make sure MOCACuff and paired Bluetooth-enabled device are within acceptable distance (no more than 10 meters) with each other. If not, put them closer.

Source: https://images-na.ssl-images-amazon.com/images/I/91oJLSPy%2BWS.pdf

COMPLAINT AGAINST MOCACARE CORP.

Source: https://images-na.ssl-images-amazon.com/images/I/91oJLSPy%2BWS.pdf

20. The communication link is initiated by the at least one media terminal. For example, when the user turns on Bluetooth on the smartphone (media terminal), the smartphone initiates the communication link.



Source: https://www.amazon.com/MOCACuff-Automatic-Pressure-Monitor-Bluetooth/dp/B01MTVKUOW

MOCACuff features a built-in "Bluetooth Data Transmission" function, which enables the device automatically transmit measuring results to paired Bluetooth-enabled device after measurement. When connection established, BPM would transmit memory data such as Measure Date, Systolic, Diastolic and Pulse to the Bluetooth enabled device.

Source: https://images-na.ssl-images-amazon.com/images/I/91oJLSPy%2BWS.pdf

21.    The at least one media node and the at least one media terminal are structured to transmit the at least one digital media file therebetween via the communication link. For example, the smartphone/app and the medical device are structured to transmit health data from the device to the smartphone over the wireless network.



Source: https://www.amazon.com/MOCACuff-Automatic-Pressure-Monitor-Bluetooth/dp/B01MTVKUOW

MOCACuff features a built-in "Bluetooth Data Transmission" function, which enables the device automatically transmit measuring results to paired Bluetooth-enabled device after measurement. When connection established, BPM would transmit memory data such as Measure Date, Systolic, Diastolic and Pulse to the Bluetooth enabled device.

Source: https://images-na.ssl-images-amazon.com/images/I/91oJLSPy%2BWS.pdf

22.    The communication link is structured to bypass at least one media terminal security measure for a limited permissible use of the communication link by the media node to only transferring the at least one digital media file to, and displaying the at least one digital media file on, the at least one media terminal. For example, the communication link is structured so that whenever the user installs the Product's app on the smartphone (media terminal), the smartphone automatically connects (bypassing any security measures) with the Product's medical device through Bluetooth code (i.e., media terminal security) whenever the smartphone comes to the range of the Bluetooth signals (for the limited purpose of transferring data form the device to the smartphone).



Source: https://www.amazon.com/MOCACuff-Automatic-Pressure-Monitor-Bluetooth/dp/B01MTVKUOW

It syncs wirelessly with the MOCACARE App, on which you can access your measurement history, health trend graphs, and personalized health coaching. Easily export and email measurements to your doctor or loved ones to keep them informed on your health. MOCAArm is so intuitively designed and portable that it'll make monitoring your blood pressure more convenient than ever.

Source: https://store.mocacare.com/pages/mocaarm

MOCACuff features a built-in "Bluetooth Data Transmission" function, which enables the device automatically transmit measuring results to paired Bluetooth-enabled device after measurement. When connection established, BPM would transmit memory data such as Measure Date, Systolic, Diastolic and Pulse to the Bluetooth enabled device.

Source: https://images-na.ssl-images-amazon.com/images/I/91oJLSPy%2BWS.pdf

**Press + button for one time:**

Under Standby Mode,

1. Press + button for one time to wake up the device and starting Bluetooth function (Bluetooth Symbol flashing).
2. While transmitting the reading to your Bluetooth-enabled Device, MOCACuff Bluetooth Symbol will remain steady on the screen.
3. MOCACuff can only pair up with one Bluetooth-enabled device at a time. To transmit measuring results to other Bluetooth-enabled device, please retry as mention above.

- Make sure MOCACuff and paired Bluetooth-enabled device are within acceptable distance (no more than 10 meters) with each other. If not, put them closer.

Source: https://images-na.ssl-images-amazon.com/images/I/91oJLSPy%2BWS.pdf

COMPLAINT AGAINST MOCACARE CORP.

Source: https://images-na.ssl-images-amazon.com/images/I/91oJLSPy%2BWS.pdf

23.     Defendant's actions complained of herein will continue unless Defendant is enjoined by this court.

24.     Defendant's actions complained of herein are causing irreparable harm and monetary damage to Plaintiff and will continue to do so unless and until Defendant is enjoined and restrained by this Court.

25.     Plaintiff is in compliance with 35 U.S.C. § 287.

## JURY DEMAND

26.     Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks the Court to:

(a)    Enter judgment for Plaintiff on this Complaint on all causes of action asserted herein;

(b)    Enter an Order enjoining Defendant, its agents, officers, servants, employees, attorneys, and all persons in active concert or participation with Defendant who receive notice of the order from further infringement of United States Patent No. 9,300,723 (or, in the alternative, awarding Plaintiff running royalties from the time of judgment going forward);

(c)    Award Plaintiff damages resulting from Defendant's infringement in accordance with 35 U.S.C. § 284;

(d)    Award Plaintiff pre-judgment and post-judgment interest and costs; and

(e)    Award Plaintiff such further relief to which the Court finds Plaintiff entitled under law or equity.

Dated: January 12, 2022                    Respectfully submitted,

*/s/ Stephen M. Lobbin*
*Attorney(s) for Plaintiff*

**EXHIBIT A**

US009300723B2

(12) **United States Patent**
Rothschild

(10) **Patent No.:** **US 9,300,723 B2**
(45) **Date of Patent:** *Mar. 29, 2016

(54) **ENABLING SOCIAL INTERACTIVE WIRELESS COMMUNICATIONS**

(75) Inventor: **Leigh M. Rothschild**, Sunny Isles Beach, FL (US)

(73) Assignee: **Display Technologies, LLC**, Plano, TX (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 398 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **13/494,097**

(22) Filed: **Jun. 12, 2012**

(65) **Prior Publication Data**

US 2012/0254360 A1 Oct. 4, 2012

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 11/999,570, filed on Dec. 7, 2007, now Pat. No. 8,671,195.

(51) **Int. Cl.**
| | |
|---|---|
| *G06F 15/16* | (2006.01) |
| *H04L 29/08* | (2006.01) |
| *H04L 29/06* | (2006.01) |
| *H04W 12/08* | (2009.01) |

(52) **U.S. Cl.**
CPC ............ *H04L 67/06* (2013.01); *H04L 63/0209* (2013.01); *H04L 63/10* (2013.01); *H04L 63/20* (2013.01); *H04W 12/08* (2013.01)

(58) **Field of Classification Search**
CPC ..... H04L 63/00; H04L 63/0209; H04L 63/10; H04L 67/06; H04L 65/1069; H04L 67/14; H04L 63/20; H04W 12/08
USPC ........ 701/33; 370/338, 395.52; 709/223, 203, 709/225, 229, 217; 455/420
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,672,572 | A | 6/1987 | Alsberg |
| 5,555,407 | A | 9/1996 | Cloutier et al. |
| 5,694,546 | A | 12/1997 | Reisman |
| 5,805,442 | A | 9/1998 | Crater et al. |
| 5,857,187 | A | 1/1999 | Uenoyama et al. |
| 5,892,825 | A | 4/1999 | Mages et al. |
| 5,915,093 | A | 6/1999 | Berlin et al. |

(Continued)

OTHER PUBLICATIONS

"Bluetooth Demystified", Nathan J. Muller, 2000, chapter 8, pp. 290-304.*
Takahashi, D., "A New Medium—The Bridge Solution; CD-Roms help give the illusion that the PC has No Limits . . . " The Wall Street Journal, Dow Jones & Co., Mar. 20, 1997.
Ladd, E., "The Document Tags", Oct. 23, 2006, retrieved from the Internet: <http://www.sunsite.serc.iisc.ernet.in/virlib/html/platinum/ch4.htm>.

(Continued)

*Primary Examiner* — Jungwon Chang
(74) *Attorney, Agent, or Firm* — Greer, Burns & Crain, Ltd.

(57) **ABSTRACT**

A transfer system from transferring a media file includes a vehicle media system and a wireless mobile device. The vehicle media system includes a wireless receiver, a security measure, and a processor configured to wirelessly detect the wireless mobile device, and receive, using the wireless receiver, the media file from the wireless mobile device. The wireless mobile device includes a wireless transmitter, and a processor configured to wirelessly detect the vehicle media system, and transmit, using the wireless receiver, the media file from the wireless mobile device. At least one of the wireless mobile device and vehicle media system is configured to create a wireless connection between the vehicle media system and the wireless mobile device, and the wireless connection does not include the security measure.

**50 Claims, 4 Drawing Sheets**



US 9,300,723 B2

Page 2

(56)        **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,922,045 | A | 7/1999 | Hanson | |
| 5,937,158 | A | 8/1999 | Uranaka | |
| 5,996,000 | A | 11/1999 | Shuster | |
| 6,101,534 | A | 8/2000 | Rothschild | |
| 6,145,088 | A | 11/2000 | Stevens | |
| 6,594,692 | B1 | 7/2003 | Reisman | |
| 7,631,084 | B2 | 12/2009 | Thomas et al. | |
| 7,711,783 | B1 | 5/2010 | Violleau et al. | |
| 6,101,534 | C1 | 6/2011 | Rothschild | |
| 2004/0128375 | A1 | 7/2004 | Rockwell | |
| 2004/0133631 | A1* | 7/2004 | Hagen et al. | 709/203 |
| 2005/0226254 | A1* | 10/2005 | Vimpari | 370/395.52 |
| 2007/0094366 | A1* | 4/2007 | Ayoub | 709/223 |
| 2008/0120369 | A1 | 5/2008 | Gustavsson | |
| 2008/0220760 | A1* | 9/2008 | Ullah | 455/420 |
| 2009/0046677 | A1* | 2/2009 | Toledano et al. | 370/338 |
| 2009/0150554 | A1 | 6/2009 | Rothschild | |
| 2010/0063670 | A1* | 3/2010 | Brzezinski et al. | 701/33 |
| 2011/0202993 | A1 | 8/2011 | Rothschild | |

OTHER PUBLICATIONS

Creative Wonders/Electronic Arts. "ABC News Links—from CD-ROM Access," Aug. 17, 2007, retrieved from the Internet: <http://www.cdaccess.com/html/pc/abcnews.htm>.

Krushenisky, C., "Reference Resources That Make the Best Reports Even Better," Smart Computing, Aug. 17, 2007, retrieved from the Internet: <http://www.smartcomputing.com>.

Iqbal, M.S., et al., "A Simplified and an Efficient Packet Level Internet Access Control Scheme," Ethertech Conslt. Ltd., UK, 1992.

Heylighen, F., "World Wide Web: a distributed hypermedia paradigm for global networking," SHARE Europe Spring Conference, pp. 355-368, Brussels, Belgium, Apr. 1994.

Citrix Winview for Networks Installation Guide, Citrix Systems, Inc., 1990. Version WV.2.3.emj.

Reisman, R.R., "Raising a Bumper Crop of CD-ROM Hybrids," Mass High Tech. Mass Tech Times, Inc., Boston, MA, Sep. 2, 1996, vol. 14, No. 29, p. 17.

Britton, M, et al., "Discover Desktop Conferencing with Netmeeting 2.0," IDG Books Worldwide, Inc., 1997.

* cited by examiner



FIGURE 1



FIGURE 2



FIGURE 3



100

| | |
|---|---|
| Media Node Disposed Within Wireless Range | 102 |
| Media Terminal Detects Media Node | 104 |
| Media Terminal Initiates Communication Link With Media Node | 106 |
| Establish Communication Link | 108 |
| Transmit Digital Media File Between Media Node and Media Terminal | 110 |

FIGURE 4

US 9,300,723 B2

**1**

## ENABLING SOCIAL INTERACTIVE WIRELESS COMMUNICATIONS

### CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a Continuation-in-Part of U.S. application Ser. No. 11/999,570, filed on Dec. 7, 2007, which is incorporated herein by reference in its entirety.

### BACKGROUND

1. Field

The present disclosure is generally related to a digital media communication protocol structured to facilitate transferring and/or transmitting one or more digital media files to and/or from a media terminal and a media node via at least one interactive computer network.

2. Description of the Related Art

As technology continues to develop and play a significant role in today's society, a vast majority of portable devices, including mobile telephones, cellular telephones, portable MP3 players, handheld or portable game consoles, Personal Digital Assistants ("PDA"), etc. are equipped with memory devices, such as hard drives and/or removable flash or memory cards, which are capable of holding or storing large amounts of data and or digital media files including digital photographs, videos, audio/music files, etc. Accordingly, with the advent of such devices having these capabilities, individuals or users are more inclined to carry around their media files, such as, for example, digital photo albums, family videos, and/or favorite music tracks.

The drawback to the above noted portable media devices, however, is that many of the devices include relatively small display screens, some of which display poor quality photos and/or videos. In addition, the speakers associated with the corresponding portable device(s) are typically rather small and produce minimal or poor sound therefrom.

In addition, the individuals or users of the media devices may desire to share the digital media files and/or transfer, display, or play the files on a computer or other media device equipped with a larger or better quality screen, or having higher quality speakers than that disposed on the portable device(s). In addition, some media devices may have better editing software, or have access to the World Wide Web to further distribute the digital media files.

Accordingly, it would be advantageous if the digital media communication protocol of the present specification is structured to facilitate transferring or transmitting one or more digital media files between two or more media devices, such as a media terminal and/or a media node, via at least one interactive computer network. In particular, it would be beneficial if the digital media communication protocol includes a communication link structured to bypass at least one or more security measures, such as a password and/or firewall, employed by the interactive computer network, the corresponding networking devices, and/or the particular media devices themselves.

In addition, once the communication link is established it would be particularly beneficial if the various media devices, including the media terminal(s) and/or media node(s), are

**2**

structured to display, save, edit, manipulate, and/or transfer the one or more digital media files.

### BRIEF DESCRIPTION OF THE SEVERAL VIEWS OF THE DRAWINGS

For a more complete understanding of the nature of the present disclosure, reference should be had to the following detailed description taken in connection with the accompanying drawings in which:

FIG. **1** is a schematic representation of one embodiment of the digital media communication protocol in accordance with the present specification.

FIG. **2** is a schematic representation of another embodiment of the digital media communication protocol in accordance with the present specification.

FIG. **3** is a schematic representation of yet another embodiment of the digital media communication protocol in accordance with the present specification.

FIG. **4** is a partial flow chart of at least one illustrative implementation of the digital media communication protocol of the present specification. FIG. **1** is a schematic representation of at least one embodiment of the system for enabling social interactive wireless communication as disclosed in accordance with the present disclosure.

Like reference numerals refer to like parts throughout the several views of the drawings.

### DETAILED DESCRIPTION

As shown in the accompanying drawings, the present specification relates to a digital media communication protocol, generally indicated as **10**. As illustrated in FIGS. **1** through **3**, at least one embodiment of the present protocol or system **10** includes one or more media terminals **20** and one or more media nodes **30**. In particular, the media terminal(s) **20** of at least one embodiment is disposed in an accessible relation to at least one interactive computer network **40** and may include, for example, a computer processing device **22**, an input device **24**, and a display device **26**. Accordingly, as shown in FIG. **1**, the media terminal(s) **20** of the various embodiments described herein may include a computer, however, any device structured to facilitate the practice of the present system in the intended fashion may be utilized, including but in no way limited to a desktop computer, laptop or notebook computer, PDA, video game console, mobile telephone, media system of a vehicle (e.g., an automobile), etc.

The media node(s) **30** of at least one embodiment of the present system **10** generally includes a portable device such as a cellular or mobile telephone, PDA, portable mp3 player, laptop or notebook computer, or any other digital media device structured to facilitate the practice of the present system in the intended manner. In at least one embodiment, however, the media node **30** is not limited to a portable device, and may include a more stationary device or structure such as, for example, a desktop computer.

Furthermore, the various embodiments of the present specification include at least one interactive computer network **40**, **40′**. In particular, as illustrated in FIG. **1**, at least one embodiment includes one or more home, office, private, limited, or closed interactive computer networks **40** at least partially defined by one or more networking devices **42**, including but not limited to a router, access point, and/or switch. Accordingly, the interactive computer network **40** may include a Local Area Network ("LAN"), Wide Area Network ("WAN"), Private Area Network ("PAN"), peer-to-peer net-

US 9,300,723 B2

3

work, near field communication ("NFC"), Bluetooth network, etc. As best shown in FIGS. 2 and 3, it is also contemplated that, especially wherein the interactive computer network 40 is a Bluetooth or peer-to-peer network, the media terminal(s) 20 and/or the media node(s) 30 can function as the networking device(s) 42, at least to the extent of defining the interactive computer network 40. Additionally, and referring again to FIG. 1, at least one interactive computer network 40' of at least one embodiment includes access to the World Wide Web, for example via the Internet. Such access to the World Wide Web 40' may be facilitated in any manner, including but not limited to, via a cable or DSL modem 44, as shown in FIG. 1, or via one or more satellites 46 and/or one or more towers or base stations 48, as illustrated in FIG. 2.

In addition, and still referring to FIGS. 1 through 3, at least one embodiment of the present system 10 includes a wireless range 50 structured to permit access to the one or more interactive computer networks 40. In particular, as shown in FIG. 1, the wireless range 50 may be at least partially defined by networking devices 42, such as a wireless router, access point, switch, etc. In yet another embodiment, as shown in FIGS. 2 and 3, however, the wireless range 50 may be partially defined by the media terminal 20 and/or media node 30, such as, for example, wherein the interactive computer network 40 includes a Bluetooth or peer-to-peer network.

In addition, and as an attempt to minimize or eliminate unauthorized access or security breaches to the interactive computer network 40, the interactive computer network 40 and/or the various networking device(s) 42 may include one or more networking device security measures 41 including a firewall, and/or passwords/keys such as, for example, Wi-Fi Protected Access ("WPA") keys, and/or Wireless Application Protocol ("WAP") keys. Accordingly, only authorized individuals or computers may generally have access to the interactive computer network 40 through the firewall, via use of the password(s)/key(s), and/or any other networking device security measure(s) 41.

The present system 10 further includes at least one digital media file 60 initially disposed or saved on at least one of the media terminal(s) 20 or media node(s) 30. Specifically, the digital media file(s) 60 may be disposed on the media terminal(s) 20, the media node(s) 30, or both. However, it should be apparent that for purposes of the present system 10, the digital media file 60 need not necessarily be created or originated on either the media terminal(s) 20 or the media node(s) 30. In particular, the digital media file(s) 60 may include virtually any electronic file or data such as a digital photograph, video, audio, animation, text, or any other electronic document or object.

Moreover, in at least one embodiment of the present system 10, the media node(s) 30 is disposable within the wireless range 50, wherein the media node 30 is detectable by the media terminal 20. In particular, as stated above, in at least one embodiment, the media node 30 includes a portable device, such as a mobile or cellular phone, PDA, laptop, etc. Accordingly, the media node 30 may be disposed within, i.e., enter, the confines of the wireless range 50, for example, when a user or individual carries the media node 30 therein. In addition, for purposes of the present system 10, the media node 30 may be disposed within the wireless range 50 when the device is powered on, activated, or otherwise configured into a discoverable and/or detectable state while simultaneously being physically disposed within the confines of the wireless range 50, and as such, the media node 30 need not necessarily be portable or easily movable. For instance, while physically disposed within the confines of the wireless range

4

50, the media node(s) 30 may be powered on or otherwise have wireless or Bluetooth capabilities activated.

Furthermore, the media terminal(s) 20 disposed in accessible relation to the interactive computer network 40 are structured to detect the media node(s) 30 as the media node(s) 30 is disposed within the confines of or is otherwise detectable within the wireless range 50. Particularly, in at least one embodiment, each media node 30 includes a node identifier structured to distinguish one media node 30 within the wireless range 50 from another. For example, the node identifier may include a device name, model/serial number, Media Access Control ("MAC") address, or Internet Protocol ("IP") address. Accordingly, as the media node 30 enters or is otherwise disposed within the wireless range 50, the media terminal 20 is structured to detect and/or identify the media node 30, for example, by the corresponding node identifier.

In addition, at least one embodiment of the present system 10 includes a terminal program disposed in an accessible relation to the media terminal 20. In particular, the terminal program of at least one embodiment is a computer software program structured to facilitate the practice of the present system 10 in the intended fashion, at least from the media terminal 20 side of the system 10. The terminal program, of at least one embodiment, may be disposed on the media terminal 20, such as, for example, on a hard drive, or other memory device associated with the media terminal 20. In yet another embodiment, however, the terminal program may be accessible via the at least one interactive network 40, 40', such as, for example, via the World Wide Web. For example, in the embodiment wherein the terminal program is accessible via the World Wide Web, a user may direct a web browser disposed in the media terminal 20 to a particular web site, which then runs or executes the terminal program and/or downloads the terminal program to the media terminal 20.

Either way, the terminal program may include at least one script which is structured to consistently or periodically monitor the wireless range 50 associated with the interactive computer network 40 for the existence of media nodes 30. When a media node 30 is disposed within the wireless range 50, the terminal program may be structured or configured to automatically alert a user at the media terminal 20 of the existence or detection of the media node 20. In particular, the terminal program may deploy a pop-up display, play an audio alarm or tone, etc. On the other hand, the terminal program may be structured or configured to alert or notify the user of any detected media nodes 30 only upon the user's specific instructions. For example, the media terminal 20, and in particular the terminal program thereof, may be structured to list or display the media nodes 30 currently disposed within the wireless range 50 upon the user clicking on or otherwise manipulating a corresponding option of the terminal program.

At least one embodiment of the present system 10 further includes a communication link 70 structured to dispose the media terminal(s) 20 and the media node(s) 30 in a communicative relation with one another via the interactive computer network 40. In particular, the communication link 70 of the various embodiments of the present system 10 is created and/or requested by the media terminal 20. As stated above, the media terminal 20 is structured to detect the media node(s) 30 disposed within the wireless range 50. As also stated above, the media node 30 may, but need not, however, be configured to have access to the interactive computer network 40. For example, the interactive computer network 40 and/or the corresponding networking device(s) 42 may be equipped with one or more security measures 41, including a WEP key or other password. The media node 30 may, but need not have

**5**

access to the WEP key or other security measure **41** so as to access the corresponding interactive computer network **40**. Even so, the media terminal **20** is structured to create and/or initiate a communication link **70** with the one or more detected media nodes **30** disposed within the wireless range **50**, for example, by sending and/or transmitting a request to the corresponding media node(s) **30** to establish a communication link **70** therewith via the interactive computer network **40**. As illustrated in FIG. **1**, the media terminal **20** need not be disposed within the wireless range **50** in order to detect the media nodes **30** or to create and/or initiate a communication link **70** therewith. In at least one embodiment of the present system **10**, the media terminal **20** does, however, need to be disposed in an accessible relation with the interactive computer network **40**, for example, wirelessly or via a direct cable **43**.

More in particular, the communication link **70** of at least one embodiment of the present specification is structured to bypass one or more media terminal security measures **21**, media node security measures **31**, and/or networking device security measures **41**. Moreover, the security measures **21**, **31**, **41** may includes passwords, keys, firewalls, etc. structured to minimize or eliminate unauthorized access to the corresponding media terminal **20**, media node **30**, networking device(s) **42**, and/or interactive computer network **40**, **40'**. Referring again to FIG. **1**, in the embodiment wherein the interactive computer network **40** and the wireless range **50** are at least partially defined by networking device(s) **42**, such as a router, access point, or switch, once established, the communication link **70** is structured to be disposed between the media terminal **20** and the media node **30**, and through the corresponding networking device(s) **42**. Particularly, in at least one implementation of the present system **10**, because the media terminal **20** is disposed in an accessible relation to the interactive computer network **40**, and because the communication link **70** is created and/or initiated by the media terminal **20**, the communication link **70** can be established regardless of whether the corresponding media node **30** independently has access to the interactive computer network **40**. In addition, the initiation of the communication link **70** by the media terminal **20**, such as through a request to establish a communication link **70**, at least partially allows the communication link **70** to bypass the firewall or other media terminal security measure(s) **21**.

Moreover, the media terminal **20** of at least one embodiment of the present system **10** may be structured or configured to automatically create and/or initiate a communication link **70** with the detected media nodes **30**. However, more practically, a user in control of the media terminal **20** may direct the media terminal **20** to create and/or initiate the communication link **70** with one or more selected media node(s) **30**, for example, via the terminal program. Similarly, the media node **30** may be structured or configured to automatically accept or decline creation of the communication link **70** initiated by the media terminal **20**. However, in at least one embodiment of the present system **10**, the media node(s) **30** may be structured or configured for a user in control of the media node **30** to selectively accept or decline the creation or establishment of a communication link **70** initiated by the corresponding media terminal **20**. As such, in at least one embodiment, the media node **30** includes one or more node programs structured to facilitate the practice of the present system **10** in the intended fashion, at least from the media node **30** side of the system **10**.

Once the communication link **70** is initiated, accepted, and/or ultimately established between the media terminal **20** and the media node **30**, the digital media file(s) **60** may be

**6**

selectively transmitted therebetween. In particular, if the digital media file **60** is initially disposed on the media node **30**, the media node **30** and the media terminal **20** may cooperatively communicate via the communication link **70** such that the digital media file **60** may be transmitted from the media node **30** to the media terminal **20**. In addition, the converse is also true. Particularly, if the digital media file **60** is disposed on the media terminal **20**, the media node **30** and the media terminal **20** may cooperatively communicate via the communication link **70** such that the digital media file **60** may be transmitted from the media terminal **20** to the media node **30**. Furthermore, in at least one embodiment of the present system **10**, the device on which the digital media file **60** is initially disposed, such as the media node **30** or the media terminal **20**, is structured to "push" the digital media file **60** to the receiving device **20**, **30** via the communication link **70**. Similarly, in at least one embodiment, once the communication link **70** is established, the receiving device **20**, **30** is structured to "pull" the digital media file **60** from the transmitting device **30**, **20** via the communication link **70**.

For illustrative purposes only, the communication link **70**, the terminal program, and/or the node program may be structured to include a selective set of parameters which define or limit the permissions associated with the communication link **70**. In particular, in at least one embodiment, the selective set of parameters may include the option of transmitting the digital media file **60** via the communication link **70** merely for purposes of displaying and/or playing the digital media file **60**, saving the digital media file **60**, manipulating or otherwise editing the digital media file **60**, etc. In the various embodiments of the present system **10**, it is contemplated that these parameters may be selected from either the media terminal **20** or the media node **30**, at various times. For instance, the parameters may be selected by the media terminal **20**, or a user in control thereof, when the communication link **70** is created and/or initiated, or by either the media terminal **20** or the media node **30** when the communication link **70** is accepted or created.

Furthermore, it is contemplated that the protocol **10** of the present system includes a plurality of versions of the terminal program and/or the node program, stated and described above. For instance, at least one embodiment includes at least one limited version of the terminal and/or node programs and at least one full version of the programs. It is contemplated that the limited versions of the terminal and/or node programs are distributed at no cost or at least a lower cost than the corresponding full versions, and as such, provide limited functionality. Of course, the terminal and/or node programs, whether the limited and/or full versions, may come pre-installed with the corresponding media terminal **20** or media node **30**.

Moreover, for illustrative purposes only, FIG. **4** shows one implementation of the system **10** in accordance with the present specification, generally indicated as **100**. In particular, and as above, in at least one embodiment, the media node **30** may include a portable device, such as for example, a mobile phone, a cellular telephone, PDA, or mobile computer. For purposes of the illustrative implementation of FIG. **4**, the interactive computer network **40** includes a wireless range **50** located in one or more offices or rooms, wherein the media terminal **20** is also disposed within one of the offices or rooms in accessible relation to the interactive computer network **40**.

Furthermore, the digital media file **60** of the present illustrative implementation of FIG. **4** may be disposed on the media node **30**, whereas the user in control of the media node **30** desires to display the digital media file **60** on the display

7

device **26** of the media terminal **20**. For example, a user of a wireless mobile device (i.e., an example of a media node **30**) can use the wireless mobile device to control the display of a digital media file **60** on a display (i.e., an example of display device **26**) of a vehicle media system (i.e., an example of a media terminal **20**) within an automobile. The vehicle media system may be part of a vehicle navigation system. Alternatively, the vehicle media system may include one or more displays within the vehicle that are separate from the vehicle navigation system. In another aspect, the vehicle media system includes an audio system (e.g., the radio) of the vehicle.

As shown in FIG. **4**, the media node **30** may be disposed within the wireless range **102**. For example, the user in control of, and/or having possession of, the media node **30** may walk into the office which is disposed within the wireless range **50**. As stated above, once the media node **30** is disposed within the wireless range **50**, as shown at **104**, the media terminal **20** is structured to detect the media node **20**. The media terminal **20** may then create and/or initiate a communication link **70** between the media terminal **20** and the media node **30** via the interactive computer network **40**, as shown at **106**, for instance, by sending a request thereto. The media node **30** may then accept the request by the media terminal **20**, which establishes the communication link **70**, as illustrated at **108** in FIG. **4**. Once the communication link **70** is established, the digital media file **60** may be transmitted, i.e., "pushed" or "pulled", between the media node **30** and the media terminal **20**, as shown at **110**.

More in particular, because the digital media file **60**, for purposes of the illustrative implementation shown in FIG. **4**, is initially disposed on the media node **30**, the digital media file **60** may be transmitted, i.e., "pushed" or "pulled", to the media terminal **20** from the media node **30** via the communication link **70**. In particular, the media terminal **20** may display the digital media file **60**, save the digital media file **60**, and/or manipulate or edit the digital media file **60**. In addition, the media terminal **20**, in at least one embodiment, may be structured to transmit the digital media file **60** and/or the edited media file back to the media node **30** via the communication link **70**.

What is claimed is:

**1**. A media system, comprising:

at least one media terminal disposed in an accessible relation to at least one interactive computer network,

a wireless range structured to permit authorized access to said at least one interactive computer network,

at least one media node disposable within said wireless range, wherein said at least one media node is detectable by said at least one media terminal,

at least one digital media file initially disposed on at least one of said at least one media terminal or said at least one media node, said at least one media terminal being structured to detect said at least one media node disposed within said wireless range,

a communication link structured to dispose said at least one media terminal and said at least one media node in a communicative relation with one another via said at least one interactive computer network,

said communication link being initiated by said at least one media terminal,

said at least one media node and said at least one media terminal being structured to transmit said at least one digital media file therebetween via said communication link, and

said communication link is structured to bypass at least one media terminal security measure for a limited permissible use of the communication link by the media node to

8

only transferring the at least one digital media file to, and displaying the at least one digital media file on, the at least one media terminal.

**2**. The method of claim **1**, wherein the security measure is a firewall.

**3**. The method of claim **1**, wherein the transmission of the media file from the at least one media node to the at least one media terminal completely bypasses the security measure.

**4**. The method of claim **1**, wherein the at least one media terminal is a navigation system.

**5**. The method of claim **1**, wherein the at least one media terminal is an audio system.

**6**. The system of claim **1**, wherein the communication link is at least one of a peer-to-peer connection, bluetooth connection, and a WiFi connection.

**7**. The system of claim **1** wherein the at least one digital media file is at least one of an image file, video file, gaming file, and a streaming video file.

**8**. The system of claim **1**, further comprising presenting the at least one digital media file on a display.

**9**. The system of claim **1**, wherein the at least one digital media file is provided by the at least one media node.

**10**. The system of claim **1**, wherein the at least one digital media file is received from a server upon instructions provided by the at least one media node.

**11**. The system of claim **1**, wherein the at least one digital media file is received from a server upon instructions provided by the wireless mobile device.

**12**. A media system configured to receive a media file from a wireless mobile device over communication network, comprising:

a wireless receiver;

a security measure; and

the media system disposed in an accessible relation to at least one interactive computer network that has a wireless range structured to permit authorized access to said at least one interactive computer network,

the wireless mobile device within said wireless range, wherein said wireless mobile device is detectable by said media system,

at least one digital media file initially disposed on the wireless mobile device, said media system being structured to detect said wireless mobile device disposed within said wireless range,

a communication link structured to dispose said media system and said wireless mobile device in a communicative relation with one another via said at least one interactive computer network,

said communication link being initiated by said media system,

said wireless mobile device and media system being structured to transmit said at least one digital media file therebetween via said communication link, and

said communication link is structured to bypass the security measure of the media system for a limited permissible use of the communication link by the wireless mobile device for only transferring the at least one digital media file to, and displaying the at least one digital media file on, the media system.

**13**. The media system of claim **12**, wherein the security measure is a firewall.

**14**. The media system of claim **12**, wherein the transmission of the at least one digital media file from the wireless mobile device to the media system completely bypasses the security measure.

**15**. The media system of claim **12**, wherein the media system is a navigation system.

US 9,300,723 B2

9

10

**16**. The media system of claim **12**, wherein the media system is an audio system.

**17**. The media system of claim **12**, wherein the communication link is at least one of a peer-to-peer connection, bluetooth connection, and a WiFi connection.

**18**. The media system of claim **12** wherein the at least one digital media file is at least one of an image file, video file, gaming file, and a streaming video file.

**19**. The media system of claim **12**, wherein the further media system is configured to present the at least one digital media file on a display.

**20**. The media system of claim **12**, wherein the at least one media file is provided by the wireless mobile device.

**21**. The media system of claim **12**, wherein the at least one digital media file is received from a server upon instructions provided by the wireless mobile device.

**22**. A method of transferring a media file from a wireless mobile device to a media system over a communication network, the media system including a security measure, comprising:

disposing the media system in an accessible relation to at least one interactive computer network that has a wireless range structured to permit authorized access to said at least one interactive computer network, wherein the wireless mobile device within said wireless range, wherein said wireless mobile device is detectable by said media system,

initially disposing at least one digital media file on the wireless mobile device, said media system being structured to detect said wireless mobile device disposed within said wireless range,

structuring a communication link to dispose said media system and said wireless mobile device in a communicative relation with one another via said at least one interactive computer network,

initiating said communication link by said media system,

transmitting by said wireless mobile device to the media system said at least one digital media file therebetween via said communication link, and

wherein said communication link is structured to bypass the security measure of the media system for a limited permissible use of the communication link by the wireless mobile device for only transferring the at least one digital media file to, and displaying the at least one digital media file on, the media system.

**23**. The method of claim **22**, wherein the security measure is a firewall.

**24**. The method of claim **22**, wherein the transmission of the at least one digital media file from the wireless mobile device to the media system completely bypasses the security measure.

**25**. The method of claim **22**, wherein the media system is a navigation system.

**26**. The method of claim **22**, wherein the media system is an audio system.

**27**. The method of claim **22**, wherein the communication link is at least one of a peer-to-peer connection, bluetooth connection, and a WiFi connection.

**28**. The method of claim **22**, wherein the at least one digital media file is at least one of an image file, video file, gaming file, and a streaming video file.

**29**. The method of claim **22**, further comprising presenting the at least one digital media file on a display.

**30**. The method of claim **22**, wherein the at least one digital media file is provided by the wireless mobile device.

**31**. The method of claim **22**, wherein the at least one digital media file is received from a server upon instructions provided by the wireless mobile device.

**32**. A wireless mobile device configured to transmit a media file to a media system over a communication network having a security measure comprising:

the media system disposed in an accessible relation to at least one interactive computer network that has a wireless range structured to permit authorized access to said at least one interactive computer network,

the wireless mobile device within said wireless range, wherein said wireless mobile device is detectable by said media system,

at least one digital media file initially disposed on the wireless mobile device, said media system being structured to detect said wireless mobile device disposed within said wireless range,

a communication link structured to dispose said media system and said wireless mobile device in a communicative relation with one another via said at least one interactive computer network,

said communication link being initiated by said media system,

said wireless mobile device and media system being structured to transmit said at least one digital media file therebetween via said communication link, and

said communication link is structured to bypass the security measure of the media system for a limited permissible use of the communication link by the wireless mobile device for only transferring the at least one digital media file to, and displaying the at least one digital media file on, the media system.

**33**. The wireless mobile device of claim **32**, wherein the security measure is a firewall.

**34**. The wireless mobile device of claim **32**, wherein the transmission of the at least one digital media file from the wireless mobile device to the media system completely bypasses the security measure.

**35**. The wireless mobile device of claim **32**, wherein the media system is a navigation system.

**36**. The wireless mobile device of claim **32**, wherein the media system is an audio system.

**37**. The device of claim **32**, wherein the communication link is at least one of a peer-to-peer connection, bluetooth connection, and a WiFi connection.

**38**. The device of claim **32** wherein the at least one digital media file is at least one of an image file, video file, gaming file, and a streaming video file.

**39**. The device of claim **32**, wherein the device is configured to present the at least one digital-media file on a display.

**40**. The device of claim **32**, wherein the at least one digital media file is provided by the wireless mobile device.

**41**. The device of claim **32**, wherein the at least one digital media file is received from a server upon instructions provided by the wireless mobile device.

**42**. A transfer system from transferring a media file over a communication network, comprising a media system; and a wireless mobile device, wherein the media system includes:

a wireless receiver,

a security measure, and

a processor configured to

the media system disposed in an accessible relation to at least one interactive computer network that has a wireless range structured to permit authorized access to said at least one interactive computer network,

US 9,300,723 B2

11

the wireless mobile device within said wireless range, wherein said wireless mobile device is detectable by said media system,

at least one digital media file initially disposed on the wireless mobile device, said media system being structured to detect said wireless mobile device disposed within said wireless range,

a communication link structured to dispose said media system and said wireless mobile device in a communicative relation with one another via said at least one interactive computer network,

said communication link being initiated by said media system,

said wireless mobile device and media system being structured to transmit said at least one digital media file therebetween via said communication link, and

said communication link is structured to bypass the security measure of the media system for a limited permissible use of the communication link by the wireless mobile device for only transferring the at least one digital media file to, and displaying the at least one digital media file on, the media system.

12

**43**. The transfer system of claim **42**, wherein the security measure is a firewall.

**44**. The transfer system of claim **42**, wherein the transmission of the at least one digital media file from the wireless mobile device to the media system completely bypasses the security measure.

**45**. The transfer system of claim **42**, wherein the media system is a navigation system.

**46**. The transfer system of claim **42**, wherein the media system is an audio system.

**47**. The system of claim **42**, wherein the communication link is at least one of a peer-to-peer connection, bluetooth connection, and a WiFi connection.

**48**. The system of claim **42** wherein the at least one digital media file is at least one of an image file, video file, gaming file, and a streaming video file.

**49**. The system of claim **42**, wherein the system is configured to present the at least one digital media file on a display.

**50**. The system of claim **42**, wherein the at least one digital media file is provided by the wireless mobile device.

*     *     *     *     *

JS-CAND 44 (Rev. 10/2020)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Display Technologies, LLC

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
STEPHEN M. LOBBIN, SML AVVOCATI P.C., 888 Prospect Street, Suite 200, San Diego, California 92037, (949) 636-1391

## DEFENDANTS

Mocacare Corp.

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | **LABOR** | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment Of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 710 Fair Labor Standards Act | ☒ 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 720 Labor/Management Relations | 835 Patent—Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | 370 Other Fraud | 740 Railway Labor Act | 840 Trademark | 460 Deportation |
| | 350 Motor Vehicle | 371 Truth in Lending | 751 Family and Medical Leave Act | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced & Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | 790 Other Labor Litigation | **SOCIAL SECURITY** | 480 Consumer Credit |
| 160 Stockholders' Suits | 360 Other Personal Injury | 385 Property Damage Product Liability | 791 Employee Retirement Income Security Act | 861 HIA (1395ff) | 485 Telephone Consumer Protection Act |
| 190 Other Contract | 362 Personal Injury -Medical Malpractice | | **IMMIGRATION** | 862 Black Lung (923) | 490 Cable/Sat TV |
| 195 Contract Product Liability | | | 462 Naturalization Application | 863 DIWC/DIWW (405(g)) | 850 Securities/Commodities/ Exchange |
| 196 Franchise | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 465 Other Immigration Actions | 864 SSID Title XVI | 890 Other Statutory Actions |
| **REAL PROPERTY** | 440 Other Civil Rights | **HABEAS CORPUS** | | 865 RSI (405(g)) | 891 Agricultural Acts |
| 210 Land Condemnation | 441 Voting | 463 Alien Detainee | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 220 Foreclosure | 442 Employment | 510 Motions to Vacate Sentence | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 443 Housing/ Accommodations | 530 General | | 871 IRS–Third Party 26 USC § 7609 | 896 Arbitration |
| 240 Torts to Land | 445 Amer. w/Disabilities– Employment | 535 Death Penalty | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 446 Amer. w/Disabilities–Other | **OTHER** | | | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | 448 Education | 540 Mandamus & Other | | | |
| | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation–Transfer ☐ 8 Multidistrict Litigation–Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
35 U.S.C. §§ 271, et seq.

Brief description of cause:
Patent Infringment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, Fed. R. Civ. P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S), IF ANY *(See instructions):*

JUDGE                    DOCKET NUMBER

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)

(Place an "X" in One Box Only)    ☐ **SAN FRANCISCO/OAKLAND**    ☒ **SAN JOSE**    ☐ **EUREKA-MCKINLEYVILLE**

DATE   01/12/2022

SIGNATURE OF ATTORNEY OF RECORD   /s/ Stephen M. Lobbin

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-CAND 44

**Authority For Civil Cover Sheet.** The JS-CAND 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I. a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)."

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Federal Rule of Civil Procedure 8(a), which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

(1) United States plaintiff. Jurisdiction based on 28 USC §§ 1345 and 1348. Suits by agencies and officers of the United States are included here.

(2) United States defendant. When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

(3) Federal question. This refers to suits under 28 USC § 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

(4) Diversity of citizenship. This refers to suits under 28 USC § 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. **(**See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS-CAND 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.

(1) Original Proceedings. Cases originating in the United States district courts.

(2) Removed from State Court. Proceedings initiated in state courts may be removed to the district courts under Title 28 USC § 1441. When the petition for removal is granted, check this box.

(3) Remanded from Appellate Court. Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

(4) Reinstated or Reopened. Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

(5) Transferred from Another District. For cases transferred under Title 28 USC § 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

(6) Multidistrict Litigation Transfer. Check this box when a multidistrict case is transferred into the district under authority of Title 28 USC § 1407. When this box is checked, do not check (5) above.

(8) Multidistrict Litigation Direct File. Check this box when a multidistrict litigation case is filed in the same district as the Master MDL docket.

Please note that there is no Origin Code 7. Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC § 553. Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Federal Rule of Civil Procedure 23.

Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS-CAND 44 is used to identify related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**IX.** **Divisional Assignment.** If the Nature of Suit is under Property Rights or Prisoner Petitions or the matter is a Securities Class Action, leave this section blank. For all other cases, identify the divisional venue according to Civil Local Rule 3-2: "the county in which a substantial part of the events or omissions which give rise to the claim occurred or in which a substantial part of the property that is the subject of the action is situated."

**Date and Attorney Signature.** Date and sign the civil cover sheet.